UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND, ADDITIONAL
SECURITY BENEFIT FUND, VACATION &
HOLIDAY FUND, TRADE EDUCATION FUND          REPORT AND
AND 401(K) SAVINGS PLAN, TRUSTEES OF         RECOMMENDATION
THE PLUMBERS AND PIPEFITTERS NATIONAL
PENSION FUND, TRUSTEES OF THE                08 CV 3036 (FB)(RML)
INTERNATIONAL TRAINING FUND and GEORGE
W. REILLY, as Business Manager of LOCAL UNION
NO. 1 OF THE UNITED ASSOCIATION OF
JOURNEYMEN AND APPRENTICES OF THE
PLUMBING AND PIPEFITTING INDUSTRY OF
THE UNITED STATES AND CANADA,

                              Plaintiffs,

        -against-

MANHATTAN PLUMBING CORP. and HENRY
PLEMPER,

                              Defendants.
----------------------------------------------------------------X

LEVY, United States Magistrate Judge:

               By order dated January 28, 2009, the Honorable Frederic Block, Senior United

States District Judge, declared defendants in default and referred this matter to me to conduct an

inquest and issue a Report and Recommendation.  For the reasons stated below, I respectfully

recommend that plaintiffs be awarded a total of $64,970.51, and that plaintiffs' requests for

permanent injunctive relief and an audit of defendant Manhattan Plumbing Corp.'s financial

records be granted.

## BACKGROUND AND FACTS

               Plaintiffs Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional

Security Benefit Fund, Vacation and Holiday Fund, Trade Education Fund and 401(k) Savings

Plan (collectively, the "Local 1 Funds"), Trustees of the Plumbers and Pipefitters National Pension Fund (the "PPNPF"), Trustees of the International Training Fund (the "ITF") (collectively, the "Funds"), and George W. Reilly, as Business Manager of the Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union"), commenced this action in July 2008 under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., and the Taft-Hartley Act, 29 U.S.C. §§ 185, *et seq*.  Plaintiff Funds are multi-employer welfare, pension, and annuity benefit plans.  (Complaint, dated July 25, 2008 ("Compl."), ¶ 1.)

Defendant Manhattan Plumbing Corp. ("Manhattan Plumbing") is a for-profit corporation operating in the State of New York within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act, 29 U.S.C. § 185.  (Compl. ¶ 8.) Defendant Henry Plemper ("Plemper") is Manhattan Plumbing's principal owner and officer. (Compl. ¶ 9.)  After defendants failed to appear in this action, Judge Block "*sua sponte* declare[d] defendants in default" and referred plaintiffs' motion to me for an inquest on damages.   (Memorandum and Order, dated Jan. 28, 2009.)  By order dated February 11, 2009, I directed the parties to file written inquest submissions.  Plaintiffs filed an inquest submission dated March 19, 2009 (see Memorandum of Law in Support of Plaintiffs' Request for Final Relief, dated Mar. 19, 2009 ("Pls.' Mem.") and Declaration of Marc A. Tenenbaum, Esq., dated Mar. 19, 2009 ("Tenenbaum Decl."), but defendants again failed to respond.

A defendant's default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  Delucia v. RTD Strategies, Inc.,

No. 07 CV 3967, 2009 WL 346972, at *2 (E.D.N.Y., Feb. 4, 2009) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)); see also Time Warner Cable of N.Y. City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).  However, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citing In re Wildlife Ctr., Inc., 102 B.R. 321, 325 (E.D.N.Y. 1989)).  Plaintiffs' allegations are as follows:

Pursuant to Manhattan Plumbing's membership in the Association of the Contracting Plumbers of the City of New York ("ACP"), defendants are bound by the collective bargaining agreement between the ACP and the Union (the "Building Trades Agreement"), which covers the period from July 1, 2007 through June 30, 2010.  (Compl. ¶ 12; Affidavit of Walter Saraceni, sworn to Oct. 27, 2008 ("Saraceni Aff."), Ex. D.)  In addition, defendants are subject to the Mechanical Equipment and Service Agreement (the "MES"), which covers the period October 1, 2005 through September 30, 2009.  (Compl. ¶¶ 12–13; Saraceni Aff., Ex. E.)  Further, through the Building Trades Agreement and the MES (collectively, the "Collective Bargaining Agreements"), defendants also are bound to the terms of the trust agreements establishing the plaintiff Funds.  (Compl. ¶ 16; Saraceni Aff., Exs. F through L (the "Trust Agreements").)

Pursuant to the Collective Bargaining Agreements, employers are required to submit remittance reports and pay benefit contributions in a timely fashion to the Funds for all plumbing work performed by their employees.  (Saraceni Aff. ¶ 18, Ex. D at 10–11; see also Pls.' Mem. at 4.)  Employers who are delinquent in making payments also are required to pay

interest and all costs, including attorney's fees, auditor's fees, and liquidated damages.  (Saraceni

Aff., Ex. D at 15.)

Plaintiffs allege that Manhattan Plumbing retained employees and performed

work that was covered by the Collective Bargaining Agreements during the relevant time.

(Compl. ¶¶ 18–19.)  According to plaintiffs, Manhattan Plumbing failed to submit remittance

reports or payments to the Funds as follows:

> (a)     For the period January through May 2008, Manhattan Plumbing's
>         payments to the Local 1 Funds are delinquent in the amount of
>         $31,153.00.
>
> (b)     For the period October 10, 2007 through May 28, 2008, Manhattan
>         Plumbing's payments to the 401(k) Plan are delinquent in the amount of
>         $6,683.04.
>
> c)      For the period January through May 2008, Manhattan Plumbing's
>         payments to the PPNPF and ITF are delinquent in the amount of
>         $4,912.88.

Plaintiffs therefore seek the outstanding contributions due to the Funds.  (Tenenbaum Decl. ¶ 2;

see also Pls.' Mem. at 5; Compl. ¶¶ 21-58.)  This amount – which includes unpaid principal

contributions of $42,748.92, interest on the unpaid contributions, lost earnings, liquidated

damages, and attorney's fees – totals $67,601.68 by plaintiffs' calculations.  (Pls.' Mem. at 11.)

In addition, plaintiffs seek a permanent injunction to enjoin defendants from "selling,

transferring or otherwise disposing of Manhattan Plumbing's assets, outside the ordinary course

of business, without the approval of the Court or the express, written consent of the Funds."

(Pls.' Mem. at 10.)  Finally, plaintiffs seek an order to permit the Funds to audit Manhattan

Plumbing's financial books and records for the period January 1, 2008 through the present.

(Pls.' Mem. at 10.)

**DISCUSSION**

"An employer's failure to contribute an agreed upon amount to a benefit plan pursuant to a collective bargaining agreement is an ERISA violation creating a right of action for the benefits due." Trs. of the Bldg. Servs. 32B-J, Pension, Health & Annuity Funds v. Linden Realty Assocs., No. 94 CV 1358, 1995 WL 302454, at *4 (E.D.N.Y. May 8, 1995). Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), authorizes the Funds to recover:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of -
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

Section 1132(g) thus creates a mandatory right to interest, liquidated damages, and attorney's fees "in any case in which a judgment in favor of the plan is awarded." Linden Realty Assocs., 1995 WL 302454, at *7; see also Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376, 382-83 (6th Cir. 1991); Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 215 (9th Cir. 1989); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1040 (E.D.N.Y. 1993).

A. Unpaid contributions

As explained above, Manhattan Plumbing did not make timely payments or submit remittance reports to the Funds for the period January to May 2008, nor to the 401(k) Plan for the period October 10, 2007 to May 28, 2008. (Tenenbaum Decl. ¶ 2.) The Trust

-5-

Agreements provide for the situation where an employer fails to submit a remittance report.[1] (Saraceni Aff., Ex. F at 27-28; Ex. G at 27-28; Ex. H at 27-28; Ex. I at 31-32; Ex. J at 21; Ex. K at 28-29; Ex. L at 29.)  Specifically, they allow the trustees to compute the sum due as the greater of either (a) the average of the monthly payments or reports actually submitted by the employer for the last three (3) months for which payments or reports were submitted, or (b) the average of the monthly payments or reports submitted by the employer for the last twelve (12) months for which payments or reports were submitted.  (Saraceni Aff., Ex. F at 27-28; Ex. G at 27-28; Ex. H at 27-28; Ex. I at 31-32; Ex. J at 21; Ex. K at 28-29; Ex. L at 29.)  By plaintiffs' unchallenged estimate, that amount equals $42,748.92 in unpaid contributions,[2] which consists of (a) $31,153.00 in employer contributions to the Local 1 Funds for January 2008 through May 2008, (b) $6,683.04 in deferred wages payable to the 401(k) Plan for October 10, 2007 through May 28, 2008, and (c) $4,912.88 in employer contributions to the PPNPF and ITF for January 2008 through May 2008.[3]  (Tenenbaum Decl. ¶ 2.)

---

[1] Plaintiffs initially submitted an unsigned copy of the PPNPF trust agreement.  At the request of my chambers, they subsequently filed a signed copy.  (See Letter of Marc A. Tenenbaum, Esq., dated Sept. 2, 2009, and attachments.)

[2] Plaintiffs originally estimated this amount at $47,951.15.  (Pls.' Mem. at 5; Saraceni Aff. ¶ 20.)  In September 2008, Manhattan Plumbing submitted remittance reports to plaintiffs indicating that defendants owed delinquent contributions to the Local 1 Funds in the amount of $44,149.41 and to the PPNPF and ITF in the amount of $9,906.68.  Defendants did not submit remittance reports regarding contributions to the 401(k) Plan.  (Pls.' Mem. at 5; Saraceni Aff. ¶ 21.)

[3] According to a preliminary audit performed by plaintiffs' auditors and completed in October 2008, subsequent to the filing of this action, defendants owe an additional $35,549.12 for the period January 2006 through December 2007.  Therefore, plaintiffs allege, the total principal amount owed from January 2006 through August 2008 is $98,394.75.  (Pls.' Mem. at 6.  But see Saraceni Aff. ¶ 28 (showing a discrepancy)).  Plaintiffs do not request the $35,549.12 at this time, but reserve the right to file an additional lawsuit to collect all additional delinquent contributions.  (Pls.' Mem. at 7.)

In a default judgment, the plaintiff must prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Delucia, 2009 WL 346972, at *2 (citing Greyhound Exhibitgroup, 973 F.2d at 159). The court has an obligation to establish that the award is appropriate "with reasonable certainty." Jacobson v. Empire Elec. Contractors, Inc., No. 08 CV 2869, 2009 WL 2271620, at *3 (2d Cir. July 30, 2009) (quoting Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). Thus, the basis for an award of damages must rest on evidentiary support, such as detailed affidavits or documentary evidence. See Delucia, 2009 WL 346972, at *2 (citing Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991)); see also Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (affirming that "the court may rely on detailed affidavits or documentary evidence"); Perishable Food Indus. Pension Fund v. Am. Banana Co., No. 01 Civ. 1922, 2003 WL 21542316, at *3 (S.D.N.Y. July 1, 2003) (stating that "a finding of damages must have evidentiary support").

In addition, in an action for unpaid contributions under ERISA, the plaintiff "has the initial burden of showing that the employer's records are inadequate." LaBarbera v. A. Morrison Trucking, Inc., 197 F. App'x 18, 21 (2d Cir. 2006) (citing Combs v. King, 764 F.2d 818, 826-27 (11th Cir. 1985)). If the plaintiff meets this burden, "it is entitled to damages unless the employer offers proof of the exact hours of work performed or evidence that 'negate[s] the reasonableness of the inference' from plaintiff's case. Id. (quoting Combs, 764 F.2d at 826) (alteration in original). If the employer provides no such evidence, the court may award damages "even though the result is only approximate." Jacobson v. Empire Elec. Contractors, Inc., No. 05 CV 1713, 2008 WL 819948, at *3 (E.D.N.Y. Mar. 25, 2008), rev'd on other grounds, 2009 WL 2271620 (2d Cir. July 30, 2009).

In the present case, defendants submitted remittance reports to the plaintiffs in September 2008, showing proof of delinquent contributions from January 2008 through August 2008.  (Saraceni Aff. ¶ 21; Letter of Marc A. Tenenbaum, Esq., dated Sept. 2, 2009 ("Tenenbaum Ltr."), Ex. 1.)  The reports show that defendants owed delinquent contributions to the Local 1 Funds (with the exception of the 401(k) Plan) in the amount of $44,149.41, and to the PPNPF and ITF in the amount of $9,906.68.  (Saraceni Aff. ¶ 21; Tenenbaum Ltr., Ex. 1.)  Since plaintiffs have requested less than the amount defendants owe (see Pls.' Mem. at 7), I respectfully recommend that their request be granted and that they be awarded $36,065.88 in unpaid contributions ($31,153.00 to the Local 1 Funds and $4,912.88 to the PPNPF and ITF).

As for the 401(k) Plan, defendants did not submit any documentation regarding monies owed to the plaintiffs.  (Saraceni Aff. ¶ 22.)  Plaintiffs have met their burden of showing that the accessible records are inadequate.  Therefore, with respect to the 401(k) Plan, an approximation of damages will suffice, see Jacobson, 2008 WL 819948, at *3, and I respectfully recommend that the 401(k) Plan be awarded $6,683.04 in delinquent wage deferrals.  (See Tenenbaum Decl. ¶ 2.)

B.  Interest on Unpaid Contributions

Interest on unpaid contributions is determined by using the rate provided under the plan, or if none, "the rate prescribed under section 6621 of Title 26."  29 U.S.C. §1132(g)(2).  Pursuant to the Collective Bargaining Agreements, plaintiffs calculated interest on unpaid contributions, from the midpoint of the due dates[4] to March 19, 2009, as follows:

---

[4] New York law, which federal courts frequently apply in calculating interest in ERISA cases, provides that when damages are incurred over a period of time, prejudgment interest may be calculated from a "single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); see also Ames v. Dynasty Elec., Inc., No. 05 CV 988, 2008 WL 1924276, at *6 (E.D.N.Y. May 1, 2008)

(continued...)

(a) the Local 1 Funds receive an interest rate of ten percent per annum, resulting in total accrued interest of $2,855.69 on delinquent contributions of $31,153.00 (Tenenbaum Decl. ¶ 5; <u>see also</u> Saraceni Aff., Ex. F at 26; Ex. G at 27; Ex. H at 26; Ex. I at 29-30);

(b) the 401(k) Plan receives an interest rate of ten percent per annum, resulting in total accrued interest of $751.84 on delinquent wage deferrals of $6,683.04 (Tenenbaum Decl. ¶ 6; <u>see also</u> Saraceni Aff., Ex. J at 20); and

(c) the PPNPF and ITF receive an interest rate of twelve percent per annum, resulting in total accrued interest of $540.41 on delinquent employer contributions of $4,912.88 (Tenenbaum Decl. ¶ 7; <u>see also</u> Saraceni Aff., Ex. K at 27; Ex. L at 28.)

I have reviewed plaintiffs' calculations and I find them accurate. I therefore recommend that plaintiffs be awarded interest on the unpaid contributions at the rates of ten and twelve percent per annum, respectively, for a total of $4,147.94.

        C. <u>Lost Earnings of the 401(k) Plan</u>

Plaintiffs assert that defendants are contractually liable for lost earnings in the amount of $275.97, on money totaling $6,683.04 which was withheld from employees' wages but not forwarded to the 401(k) Plan during the period October 10, 2007 through May 28, 2008. (Pls.' Mem. at 8.) Pursuant to the Building Trades Agreement, defendants are liable for any lost earnings due to failure to remit employee contributions on a timely basis. (Saraceni Aff., Ex. D at 13.) <u>See also</u> <u>Philip Gen. Constr.</u>, 2007 WL 3124612, at *12 (citing 29 U.S.C. § 1109(a) in support of plaintiff's request for lost earnings). However, the only documentation plaintiffs provide to corroborate this amount is plaintiffs' counsel's affidavit. This is an insufficient factual basis on which to base an award for damages in this Circuit. <u>Credit Lyonnais Secs.</u>, 183

---

[4](...continued)
(permitting prejudgment interest calculation based on New York law); <u>Bricklayers Ins. & Welfare Fund v. Golden Vale Constr., Inc.</u>, No. 06 CV 1028, 2007 WL 3232244, at *7 (E.D.N.Y. Oct. 31, 2007) (finding the "single reasonable intermediate date" method of interest calculation reasonable in an ERISA case). Therefore, plaintiffs' calculation from the midpoint of the due dates is appropriate.

F.3d at 154-55 (affidavit of plaintiff's counsel is insufficient evidence on which to enter an award for damages); LaBarbera v. Rockwala Inc., No. 06 CV 6641, 2007 WL 3353869, at *6 (E.D.N.Y. Nov. 8, 2007) (stating that the court cannot assess damages absent an affidavit by a person with actual knowledge of the facts, supported by appropriate documentation).  In addition, the Building Trades Agreement mandates that lost earnings be calculated at one percent of the gross weekly wage of each employee.  (Saraceni Aff., Ex. D at 13.)  Because plaintiffs have not provided information about the number of employees or their weekly wages, the court has no way to verify whether this amount is even approximately correct.  I therefore respectfully recommend that plaintiff's request for $275.97 in lost earnings be denied, with leave to renew their application with appropriate documentation within thirty days.

   D.  Liquidated Damages

   Pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii), plaintiffs are also entitled to liquidated damages "in an amount not in excess of 20 percent" of the principal amount due.  Plaintiffs assert that the Trust Agreements entitle them to liquidated damages as follows:

   (a)   the Local 1 Funds are entitled to twenty percent of the amount of delinquent employer contributions, resulting in a total of $6,230.60. (Tenenbaum Decl. ¶ 5; see also Saraceni Aff., Ex. D at 15);

   (b)   the 401(k) Plan is entitled to twenty percent of the amount of delinquent wage deferrals, resulting in a total of $1,336.08.  (Tenenbaum Decl. ¶ 6; see also Saraceni Aff., Ex. D at 15); and

   (c)   the PPNPF and ITF are entitled to ten percent of the amount of delinquent employer contributions, resulting in a total of $491.29.[5] (Tenenbaum Decl. ¶ 7; see also Saraceni Aff., Ex. D at 77, Ex. K at 27.)

---

[5] According to the ITF trust agreement, plaintiffs are entitled to liquidated damages of up to twenty percent of the amount of delinquent contributions to the ITF.  (Saraceni Aff., Ex. K at 27.)  According to the Building Trades Agreement, the PPNPF is entitled to liquidated damages of up to ten percent.  (Saraceni Aff., Ex. D at 77).

Therefore, plaintiffs request liquidated damages in the total amount of $8,057.97.  (Pls.' Mem. at 11.)  I have reviewed the liquidated damages calculations, and I find this amount accurate.  I therefore respectfully recommend that plaintiffs be awarded $8,057.97 in liquidated damages with respect to defendants' delinquent contributions and wage deferrals.

E. <u>Defendant Plemper's Individual Liability</u>

Plaintiffs seek to hold defendant Plemper personally liable for Manhattan Plumbing's delinquent contributions on the grounds that: (1) Plemper is directly bound by the Collective Bargaining Agreements (<u>see</u> Compl. ¶ 39; Pls.' Mem. at 8), and (2) Plemper breached his fiduciary duties to the Funds under ERISA.  (Compl. ¶ 64; Pls.' Mem. at 8-9.)  Even in the case of a default, the defaulting party does not admit conclusions of law.  <u>In re Wildlife Ctr.</u>, 102 B.R. at 325.  The court has discretion to deny entry of a default judgment if the plaintiff fails to establish that it is entitled to relief.  <u>Golden Vale</u>, 2007 WL 3232244, at *1 (citing <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993)); <u>see also</u> <u>United States v. Ponte</u>, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (holding that even if defendant defaults, plaintiff must show that it is legally entitled to the relief it seeks).

1. <u>Plemper's Individual Liability Under the Collective Bargaining Agreements</u>

Although federal law governs disputes arising under ERISA, New York state law applies in determining whether a collective bargaining agreement imposes personal liability on a signatory to the agreement.  <u>Philip General Constr.</u>, 2007 WL 3124612, at *6 (citing <u>Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.</u>, 301 F.3d 50, 53 (2d Cir. 2002); <u>Krishna v. Colgate Palmolive Co.</u>, 7 F.3d 11, 13-14 (2d Cir.1993)).  Based on its analysis of New York law, the Second Circuit has held that in ERISA cases, there must be "clear and explicit evidence" that an individual intended to be held personally liable for the liability of a

corporation.  Thomsen Constr. Co., 301 F.3d at 53.  The court must determine whether there is

"overwhelming evidence of the signatory's intention to assume personal liability."  Philip Gen.

Constr., 2007 WL 3124612, at *6 (quoting Thomsen Constr. Co., 301 F.3d at 53).  Dispositive

factors include "the length of the contract, the location of the liability provision(s) in relation to

the signature line, the presence of the signatory's name in the agreement itself, the nature of the

negotiations leading to the contract, and the signatory's role in the corporation."  Cement &

Concrete Workers Dist. Council Welfare Fund v. Lollo, 35 F.3d 29, 35 (2d Cir. 1994).

Applying these factors to the present case, I find that plaintiffs have failed to

demonstrate that defendant Plemper intended to be personally bound by the Collective

Bargaining Agreements.  The Building Trades Agreement is a seventy-nine-page document that

contains two provisions arguably supporting individual liability.[6]  However, the agreement lists

the ACP as a signatory, not defendants.  (Saraceni Aff., Ex. D at 74-75; see also Tenenbaum

Ltr.)[7]  In addition, the court in Philip General Construction found provisions substantially the

same as those at issue here too ambiguous to support the imposition of personal liability.  See

2007 WL 3124612, at *8.

---

[6] The first clause reads, "[t]his Agreement is and shall be binding upon the Employer and his/her or its successors, assigns, beneficiaries and legal representatives, and each officer of the Employer."  (Saraceni Aff., Ex. D at 1.)  The second clause reads, "[t]he undersigned Plumbing Contractor and individual signatory agree to be bound to all agreements, declarations of trusts, amendments and regulations thereto, referenced in the Collective Bargaining Agreement. (Saraceni Aff., Ex. D at 75.)

[7] Manhattan Plumbing is bound to the Building Trades Agreement by way of its membership in the ACP, pursuant to signing the application discussed above.  As the Second Circuit has observed, the longer the contractual document, the more likely it will be a "trap for an unwary signatory."  Lerner v. Amalgamated Clothing & Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991).  The 79-page length of the Building Trades Agreement is therefore a factor that weighs against imposing liability on Plemper.  See Philip Gen. Constr., 2007 WL 3124612, at *7 (declining to impose liability on an individual who signed a one-page document that incorporated a seventy-eight-page agreement).

The only document actually signed by defendant Plemper is Manhattan Plumbing's application for admission to the ACP.  (Saraceni Aff., Ex. C.)  Plaintiffs allege that Plemper signed the application immediately below a statement accepting individual liability.[8] (Pls.' Mem. at 3.)  However, under the factors enumerated in Lollo, 35 F.3d at 35, this signature is not sufficient to impose individual liability on Plemper.  On the one hand, the application is two pages long and the signature is immediately below the liability clause.  Both of these factors weigh in favor of imposing liability on Plemper.  See Philip Gen. Constr., 2007 WL 3124612, at *7.  On the other hand, the clause says nothing about the imposition of *personal* liability.  Where the language of the liability provision is ambiguous, courts decline to hold an individual defendant personally liable.  Id. at *8 (citing Lerner, 938 F.2d at 5-6).   In addition, the clause appears on an application for membership which is made on behalf of defendant Manhattan Plumbing, not Plemper, who merely is listed as an officer.[9]

The signature block of the application is equally unconvincing as evidence in favor of imposing individual liability on Plemper.  "[W]here individual responsibility is demanded[,] the nearly universal practice is that the officer signs twice—once as an officer and again as an individual."  Thomsen Constr. Co., 301 F.3d at 54 (quotation marks and citation omitted).  While two signatures are not required, the appearance of only one signature in the individual's official capacity does not indicate intent to be held personally liable.  Golden Vale,

---

[8] The liability clause on the application for ACP membership reads: "Acceptance as a member of this Association means that I undertake and agree to comply with the provisions of the Constitution and By-Laws, the rules made by, and the agreements and undertakings entered into by the Association, whether or not the Association is signatory to such undertakings." (Pls.' Mem. at 3; Saraceni Aff. ¶ 10, Ex. C).

[9] Plaintiffs do not provide any facts concerning the negotiations leading up to the signing.

2007 WL 3232244, at *3 (citing Thomsen Constr. Co., 301 F.3d at 52).  Here, the appearance of only one signature in the signature block weighs against holding Plemper personally liable.

Finally, Plemper's role as an officer of the company does not weigh in favor of finding him personally liable for Manhattan Plumbing's obligations.  Contrary to plaintiffs' argument, cases in the Second Circuit state that "[o]rdinarily, a corporate officer is not personally liable for the ERISA obligations of the corporation absent unusual circumstances, such as fraud or facts warranting piercing the corporate veil." Id. at *2; see also Sasso v. Cervoni, 985 F. 2d 49, 50 (2d Cir. 1993).  Plaintiffs do not allege that defendant Plemper has acted fraudulently or engaged in activities that would warrant piercing the corporate veil.[10]  See Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979) (noting the courts' reluctance to disregard the corporate form absent fraudulent conduct or use of the corporation as an alter ago).

Balancing the foregoing factors, and taking into account the "presumption against individual liability in such cases," Lerner, 938 F.2d at 3, I find that plaintiffs have failed to show by clear and explicit evidence that defendant Plemper intended to be held individually liable for the obligations of defendant Manhattan Plumbing.  The mere presence of his signature on the application for membership to the ACP does not warrant holding him personally liable.

2. Plemper's Individual Liability as a Fiduciary of the Local 1 Funds

Plaintiffs further allege that, because Plemper was a fiduciary of the Local 1 Funds within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), he was required to use plan assets solely for the benefit of participants and their beneficiaries.  29 U.S.C.

---

[10] Plaintiffs do allege that defendants "engaged in unexplained monetary transactions with two possible alter egos." (Memorandum of Law in Support of Plaintiffs' Order to Show Cause, dated Oct. 28, 2008 ("Pls.' Order to Show Cause"), at 5; see also Saraceni Aff. ¶ 29.)  However, plaintiffs do not allege that Manhattan Plumbing is Plemper's alter ego.

-14-

§ 1104(a)(1)(A).  Therefore, in failing to make payments, Plemper allegedly breached his fiduciary duties and is personally liable to make good to the Funds the losses resulting from these fiduciary breaches under section 409(a) of ERISA, 29 U.S.C. 1109(a).  (Pls.' Mem. at 9.)

Plaintiffs have erroneously stated that as a fiduciary of the Local 1 Funds, defendant Plemper is liable for losses to all of the Funds.  (See Compl. ¶ 64; Pls.' Mem. at 9.) However, by plaintiffs' own reasoning, Plemper is not liable for losses to Funds for which he was not a fiduciary.  Plaintiffs do not allege that Plemper was a fiduciary to either the PPNPF or ITF.  Therefore, this discussion applies only to the Local 1 Funds.

The Second Circuit recently addressed the question of when an employer with discretion over unpaid ERISA contributions becomes a fiduciary of the plan.  In re Halpin, 566 F.3d 286 (2d Cir. 2009).  It held that, in order to establish that an employer is a fiduciary, a plaintiff must prove " both that (1) the unpaid contributions were plan assets and (2) [the employer] exercised a level of control over those assets sufficient to make him a fiduciary."  Id. at 289.

With respect to the first prong, the court held that, "in the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan."  Id. at 287.  Here, the trust agreements of the Local 1 Funds clearly state that "[t]he assets of this Trust Fund consist of . . . the sums of money that … are due and owing to the Fund by the Employers as required by the Collective Bargaining Agreements."  (Saraceni Aff. ¶ 26,  Ex. F at 6; Ex. G at 6; Ex. I at 6, Ex. J at 5.)[11]  This language tips the balance in plaintiffs' favor.

---

[11] Plaintiffs cite the PPNPF Trust Agreement as authority.  (Saraceni Aff., Ex. L at 15; Pls.' Mem. at 9 n.1).  However, the PPNPF Trust Agreement contains no language making unpaid contributions assets of the plan.  In addition, plaintiffs cite to the ITF Trust Agreement.  Because the ITF is not part of the Local 1 Funds, the terms of its agreement are not relevant here.

However, the Building Trades Agreement, which incorporates the trust agreements by reference (Saraceni Aff., Ex. D at 75), includes ambiguous, if not contradictory language.  Pursuant to the Building Trades Agreement, unpaid contributions are referred to as "monies owing" (id. at 13), "fringe benefits and contributions" (id.), and "payment" (id. at 14).  Under the section titled "Fringe Benefits/Bond Failure to Pay/Provide," the agreement reads, "[i]n the event an Employer shall default in payment of the fringe benefits . . . it shall be considered the same as failure to pay wages."  (Id. at 14.)  The only mention of assets is with respect to the 401(k) Plan, which states, "[e]ach Employer agrees to . . . remit all Employee contributions as soon as such contributions can be reasonably segregated from the general assets of the Employer."  (Id. at 12.)  29 C.F.R. § 2510.3-102(a) provides that plan assets include amounts that an employee "pays to an employer or . . . has withheld from his wages by an employer, for contribution to the plan as of the earliest date [that they] can reasonably be segregated from the employer's general assets."  However, the agreement itself goes on to refer to the delinquent payments as "contributions," not as assets.  (Saraceni Aff., Ex. D at 13.)  Finally, by the terms of the Building Trades Agreement:

> No contracts or understandings inconsistent with or contrary to the terms of this Agreement shall be made between the Association or Employers covered by this Agreement and the Union . . . .

(Id. at 70.)  In addition, the Building Trades Agreement states:

> [T]his agreement contains the complete understanding between and among [the parties hereto].  All prior agreements and understandings, oral or written, shall terminate upon the taking effect of and shall be superceded by this Agreement.

(Id.)  Because the Building Trades Agreement, signed by the ACP and the Union in 2007, supersedes the Trust Agreements, the language of the Building Trades Agreement is controlling.[12]

In light of the contradictory language in the Building Trades Agreement and the presumption against treating unpaid contributions as plan assets, see generally Halpin, 566 F.3d 286, plaintiffs have not met their burden of establishing that the unpaid contributions here are plan assets.  Therefore, plaintiffs have failed to satisfy the first prong of the test for finding Plemper an ERISA fiduciary.  Analysis of the second prong is therefore unnecessary.  In sum, I recommend that defendant Plemper not be held personally liable for the obligations of defendant Manhattan Plumbing.

F.  Attorney's Fees and Costs

As the prevailing parties, plaintiffs move pursuant to 29 U.S.C. § 1132(g)(2)(D) for attorney's fees and costs.  In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent, and work done.  N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983); Broad. Music, Inc. v. R Bar of Manhattan Plumbing, Inc., 919 F. Supp. 656, 661 (S.D.N.Y. 1996).  Plaintiffs support their request for $12,370.88 with contemporaneous time records.  (See Tenenbaum Decl., Ex. 1.)

"The determination of a reasonable fee award under Section 1332(g)(2)(D) of ERISA lies within the sound discretion of the district judge."  LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4 (E.D.N.Y. Feb. 26, 2009) (internal quotation marks and citation omitted); see also Cruz v. Local Union No. 3 of IBEW, 34 F.3d

---

[12] Plaintiffs have not made any effort to explain this ambiguity.

1148, 1159 (2d Cir. 1994).  As explained in <u>Anthropologie, Inc. v. Forever 21, Inc.</u>, No. 07 Civ.

7873, 2009 WL 1383605, at *1 (S.D.N.Y. May 18, 2009):

> [a]lthough the term "lodestar" is now disfavored by the Second
> Circuit, <u>see, e.g.</u>, <u>Arbor Hill Concerned Citizens Neighborhood
> Ass'n v. County of Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008),
> the applicable approach still contemplates (1) a consideration of
> the number of hours actually spent by counsel and other personnel
> that are deemed reasonably necessary to the successful outcome
> for the client and (2) the setting of reasonable hourly rates for
> counsel, a criterion most recently, if opaquely, described as "the
> rate a paying client would be willing to pay."  <u>Id.</u> at 190.

Reasonable hourly rates are determined by reference to fees in the community in which the

action is pending and to the skill and experience of the attorneys who worked on the matter.

<u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 115-16 (2d Cir. 1997).

Here, plaintiffs have failed to provide information regarding the level of

experience of the attorneys and paralegals involved in this case.[13]  However, I find plaintiffs'

counsel's hourly rates of $200 to $275, and $90 for a paralegal, reasonable and in line with rates

awarded in this district.  <u>See, e.g.</u>, <u>Luca v. County of Nassau</u>, No. 04 CV 4898, 2008 WL

2435569, at *10 (E.D.N.Y. June 16, 2008) (approving hourly rates ranging from $400 for

partners to $100 for other attorneys).

---

[13]  The court ascertained information about plaintiffs' attorneys from the firm's website:
http://vandallp.com (last visited Sept. 29, 2009).  According to that website, Charles Virginia
(Partner) received his law degree in 1989 and has approximately twenty years of experience.
Marc A. Tenenbaum (Of Counsel) received his law degree in 1989 and also has approximately
twenty years of experience.  Judy Wong (Associate) received her law degree in 1998 and has
approximately eleven years of experience.  The website contains no information regarding
attorneys Kellie Walker or Michael DeSantis, but the <u>New York Lawyers Diary and Manual</u>
(2009) indicates that Ms. Walker was admitted to practice in 1999 and that Mr. DeSantis was
admitted to practice in 1994.  No information concerning the paralegal, Richard Epstein, could
be identified.

"As for the number of hours expended, courts uphold fee requests in ERISA cases when they determine that such fees are reasonable." Trs. of United Teamster Fund v. Ronnie's Truck Serv., Inc., No. 07 CV 4456, 2008 WL 2686993, at *4 (E.D.N.Y. July 8, 2008) (citing McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006)). The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz, 34 F.3d at 1160 (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). The hours spent on litigation that are "excessive, redundant or otherwise unnecessary" should be excluded from the court's fee award. Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

Plaintiffs' counsel spent a total of 60.25 hours on this case. (Tenenbaum Decl. ¶ 9.) Counsel's work on this case included corresponding with clients and the court, calculating damages, and locating defendants. Michael DeSantis, Esq. spent approximately 3.5 hours drafting the complaint. In addition, counsel spent approximately twenty-one hours drafting and revising plaintiffs' Order to Show Cause, including fourteen hours of work performed by DeSantis. It bears noting that this motion was largely successful. See Hensley, 461 U.S. at 436 (stating that "the most critical factor is the degree of success obtained"). Attorney Marc Tenenbaum devoted approximately ten hours to analyzing inquest issues and drafting the related documents. Finally, attorneys DeSantis, Tenenbaum and Judy Wong spent approximately four hours total preparing and attending the hearing before Judge Block. (See Tenenbaum Decl., Ex. 1.)

Although portions of this case, such as drafting the Order to Show Cause, were doubtless time consuming, this was a routine and undisputed default motion in an ERISA matter. Plaintiffs have submitted documents that are boilerplate and have made errors that indicate

careless drafting and preparation.[14]  In addition, some of the time entries appear duplicative or excessive.  See Del Turco v. Taylor Tile Co., No. 03 CV 5543, 2007 WL 2581882, at *6 (E.D.N.Y. Aug. 6, 2007).  Also, many of the entries are vague and unexplained by any key.[15]  Cf. U.S. Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a reduction of attorney's fees to account for vagueness in documentation of certain time entries).  Thus, I find the total number of hours claimed in this case excessive.

Where, as here, the application for fees is voluminous, the court may order an across-the-board percentage reduction in compensable hours.  E.g., In re "Agent Orange" Prods. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987) (explaining that "the district court has the authority to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'" (quoting Carey, 711 F.2d at 1146)).  I find a twenty percent reduction in plaintiff's counsel's billing records sufficient to account for some vague entries and some duplicative and excessive work.  See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998).  Accordingly, I recommend a fee award of $9,420.78 (i.e., $11,775.98 reduced by twenty percent).

Plaintiffs also seek costs in the amount of $594.90.  (Tenenbaum Decl., Ex. 1.)  A court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients."  Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987) (quotation marks and citations omitted).  "A

---

[14] Plaintiffs' attorneys made errors such as referencing non-existent language in the PPNPF Trust Agreement and failing to distinguish between 'the Local 1 Funds' and 'the Funds' in plaintiffs' fiduciary discussion.

[15] For example, "attn to csp from O&O" (Tenenbaum Decl., Ex. 1 at 16) and "attention to file" (id. at 14).

prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overheard."  Trs. of Local 813 I.B.T. Ins. Trust Fund v. Chinatown Carting Corp., No. 06 CV 3386, 2007 WL 2077719, at *3 (E.D.N.Y. June 29, 2007) (quotation marks and citation omitted), report and recommendation adopted, 2007 WL 2454203 (E.D.N.Y. Aug. 23, 2007) (Block, J.).  Here, the expenditures are for filing fees, service of process, postage, and research fees, and I find the amount reasonable.  I therefore respectfully recommend that plaintiffs be awarded $594.90 in costs.

      G. Injunctive Relief

      Plaintiffs also seek permanent injunctive relief pursuant to 29 U.S.C. § 1132, *et seq.*  See Chao v. Merino, 452 F.3d 174, 185 (2d Cir. 2006) (stating that ERISA grants the court wide discretion in creating equitable relief); Beck v. Levering, 947 F.2d 639, 641 (2d Cir. 1991) (holding that ERISA provides for injunctive relief).  By Memorandum and Order dated January 28, 2009, Judge Block issued a preliminary injunction against these defendants.  Plaintiffs now ask the court to permanently enjoin defendant Manhattan Plumbing "from selling, transferring or otherwise disposing of Manhattan Plumbing's assets, outside the ordinary course of business, without the approval of the Court or the express, written consent of the Funds."[16]  (Pls.' Mem. at 10.)  In addition, plaintiffs ask the court to require defendants to cooperate in an audit of their financial books and records.  Although ERISA allows the court to grant such relief, "injunctive relief does not follow automatically upon a finding of statutory violations."  Del Turco, 2007 WL 2581882, at *6 (quotation marks and citation omitted).

---

[16] Plaintiffs originally requested a preliminary injunction to (1) require defendants to provide security in the amount of $92,420.04 to be held in escrow, and (2) enjoin defendants from selling or transferring assets.  (Pls.' Order to Show Cause at 7.)  Their inquest submission requests only the latter.  (Pls.' Mem. at 10.)

A court may "issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." LaBarbera v. David Liepper & Sons, Inc., No. 06 CV 1371, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (quoting King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996)).  ERISA authorizes courts to provide injunctive relief for nonpayment of contributions to employee benefit funds.  Benefit plan fiduciaries may commence an action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
> (B) to obtain other appropriate equitable relief
> (i) to redress such violations or
> (ii) to enforce any provisions of this subchapter or terms of the plan.

29 U.S.C. § 1132(a)(3).  In the instant case, plaintiffs seek injunctive relief to redress violations of ERISA.  Therefore, plaintiffs have satisfied the first condition.

Plaintiffs must also establish that they meet the prerequisites for an injunction. See King, 1996 WL 629564, at *1.  Since defendants' default constitutes an admission of liability, plaintiffs have achieved actual success on the merits.  To obtain an injunction, however, plaintiffs must also show irreparable harm and the absence of an adequate remedy at law.  See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir. 1999) (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).

Injunctive relief is not appropriate where a loss can be adequately remedied by an award of money damages.  In re Feit & Drexler, Inc., 760 F.2d 406, 415-16 (2d Cir. 1985). However, injunctive relief has been granted where the collection of money damages is unlikely. See id. at 416 (upholding a preliminary injunction where a defendant transferred assets out of the jurisdiction).  Irreparable harm can been proved by evidence that there was "substantial danger

that the disputed funds may not be collected" due to the delinquent employer's financial condition. Demolition Workers Union, Local 95 Ins. Annuity & Pension Funds v. Mackroyce Contracting Corp., No. 97 Civ. 4094, 2000 WL 297244, at *9 (S.D.N.Y. Mar. 22, 2000); see also Labarbera v. Frank J. Batchelder Transp. LLC, No. 08 CV 3387, 2009 WL 240521, at *6 (E.D.N.Y. Feb. 2, 2009) (implying that irreparable harm could have been established by evidence of inability to collect a money judgment). There is evidence in the record to indicate that defendants have a history of failing to make the required contributions. (Saraceni Aff. ¶¶ 31-35). In addition, there is evidence to suggest that plaintiffs will be unable to collect a money judgment from defendants. For example, plaintiffs allege that repeated attempts to secure payment from defendants have been unsuccessful. (Saraceni Aff. ¶ 32.) In addition, plaintiffs allege that defendant Plemper advised plaintiffs' attorneys that "Manhattan Plumbing would be going out of business." (DeSantis Aff. ¶ 6.) This is sufficient to support a finding of irreparable harm and an inadequate remedy at law. See, e.g., Rudd v. Advance Bedding Corp., 95 CV 2099, 1995 WL 548723, at *2 (E.D.N.Y. Sept. 8, 1995) (holding that employer's statement of intent to transfer assets constitutes a sufficient showing that injunctive relief is warranted).

Because plaintiffs have satisfied their burden of establishing irreparable harm and the absence of an adequate remedy at law, I respectfully recommend that plaintiffs' request for permanent injunctive relief be granted and that defendants be permanently enjoined from selling, transferring, or otherwise disposing of Manhattan Plumbing's assets, outside the ordinary course of business, without the approval of the court or the express, written consent of the Funds.

H. Audit

Pursuant to the Building Trades Agreement, defendant Manhattan Plumbing is contractually required to allow plaintiffs to inspect all general and specific books of accounts

-23-

and any supporting documentation to verify proper payment of contributions to the Funds. (Saraceni Aff., Ex. D at 19.)  In addition, the Trust Agreements explicitly provide that the Funds may "designate a qualified representative to conduct an audit of the . . . records of any Employer . . . to determine whether the Employer is making full payments . . . . "  (Saraceni Aff., Ex. F at 24; see also, Exs. G – L.)  Ordering an audit is undoubtedly within the Court's equitable powers. See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 569 (1985) (finding that an audit would be "highly relevant" to the legitimate concerns of trustees under ERISA.  In light of the evidence supporting plaintiffs' request for permanent injunctive relief, I respectfully recommend that plaintiffs' request for an audit of defendant Manhattan Plumbing's general and specific books of accounts, and supporting documentation, be granted.

CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs be awarded (a) $36,065.88 in unpaid Fund contributions; (b) $6,683.04 in delinquent wage deferrals to the 401(k) Plan; (c) interest on the unpaid contributions and delinquent wage deferrals in the amount of $4,147.94; (d) $8,057.97 in liquidated damages; (e) $9,420.78 in attorney's fees; and (f) $594.90 in reasonable costs.  This brings the total amount owed to $64,970.51.  I further recommend that plaintiffs' requests for permanent injunctive relief and an audit of defendant Manhattan Plumbing's financial records be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Block and to my chambers, within ten (10) business days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: Brooklyn, New York
       October 8, 2009

Respectfully submitted,


_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge